IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| KYONG HUI LANE, § | |
| § | |
| Plaintiff, § | |
| § | |
| vs. § | Civil Action No. C-05-306 |
| § | |
| TARGET CORPORATION, § | |
| § | |
| Defendant. § | |

### ORDER GRANTING MOTION TO EXCLUDE EXPERT TESTIMONY

On this day came on to be considered Defendant's Motion to Exclude the testimony of Plaintiff's designated expert Gary S. Nelson (D.E. 33). For the reasons discussed below, the Court GRANTS Defendant's motion.

**I.   JURISDICTION**

This Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332(a).

**II.  BACKGROUND**

On May 18, 2003, Plaintiff Kyong Hui Lane ("Plaintiff") went to one of Defendant Target Corporation's ("Defendant") retail stores to purchase a sympathy card for her friend. Shortly after entering the store, Plaintiff slipped and fell on a liquid that had leaked from a bottle of cleaning fluid when it fell to the floor from one of Defendant's product displays. Plaintiff claims to have suffered injuries from her fall.

On August 5, 2004, Plaintiff filed suit in Texas state court alleging that Defendant's negligence caused her injuries.[1] In particular, Plaintiff grounded her negligence claim on two theories. First, Plaintiff alleged that the presence of the liquid on the floor was a dangerous condition of which Defendant had actual or constructive knowledge, and that Defendant failed to act reasonably in response to the spill. (See Pl.'s Orig. Compl. ("POC") at ¶ 14.) Second, Plaintiff alleged that Defendant should have known that the product display *itself* was an unreasonably dangerous condition because of the high risk that spills would result from the display. (POC at ¶ 14(b).)

In support of these claims, Plaintiff retained Dr. Gary S. Nelson ("Dr. Nelson"), a safety engineer and manager, to do an "accident cause analysis" of Plaintiff's fall. (See D.E. 28.) After conducting the analysis, Dr. Nelson reached two major conclusions. First, Dr. Nelson concluded that Defendant was negligent by failing to have a "store policy and practice to immediately go to and secure a floor spill from customer exposure before attempting to obtain cleaning supplies." (Nelson Report at p. 12, ¶ 10(b).) Second, Dr. Nelson concluded that "the display of a product subject to potential leakage placed at a height near floor level subject to contact by

---

[1] On June 21, 2005, Defendant removed the case to this Court pursuant to 28 U.S.C. §§ 1441, 1446. (D.E. 1.)

2

shopping carts in a high traffic area, without a shelf barrier to prevent damage from shopping carts or the product falling to the floor," was an "unsafe condition" of which Defendant should have known. (Id. at ¶ 10(a).)

On February 22, 2006, Defendant filed a Motion to Exclude Dr. Nelson's testimony on the grounds that it was both unreliable and irrelevant. (D.E. 33.) On March 14, 2006, Plaintiff filed a response to Defendant's motion. (D.E. 38.) On March 16, 2006, the Court held a Daubert hearing at which Dr. Nelson testified.

### III. DISCUSSION

#### A. Standard for Admissibility of Experts

Federal Rule of Evidence 702 governs the admissibility of expert testimony in federal court. That rule provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Under Rule 702, expert testimony is admissible only if it is both (1) reliable; and (2) relevant. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 591

(1993). The proponent of the evidence has the burden of establishing these admissibility requirements by a preponderance of the evidence. Bourjaily v. United States, 483 U.S. 171 (1987); see also Moore v. Ashland Chem. Inc., 151 F.3d 269, 276 (5th Cir. 1998) (en banc). The trial court acts as "gatekeeper," and must make a preliminary assessment of whether the admissibility requirements have been met. Id. at 592-93. The court's gatekeeper function applies to all expert testimony, not just testimony based in science. Seatrax, Inc. v. Sonbeck Int'l, Inc., 200 F.3d 358, 372 (5th Cir. 2000); Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999).

With respect to the issue of reliability, the trial court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Seatrax, Inc., 200 F.3d at 372. In making this determination, courts may look to several factors, including:

> (1) whether the theory or technique in question can be and has been tested,
> (2) whether it has been subjected to peer review and publication,
> (3) its known or potential rate of error along with the existence and maintenance of standards controlling the technique's operation,
> (4) whether the methods are generally accepted in the scientific community.

Daubert, 509 U.S. at 593-94. In the case of non-scientific expert testimony, however, the court must have "considerable leeway in deciding . . . how to go about determining whether particular expert testimony is reliable," because the Daubert factors will not always translate easily to non-scientific opinions. Kumho Tire, 526 U.S. at 150-152. Thus, a court "should consider the specific factors identified in Daubert [only] where they are reasonable measures of the reliability of expert testimony." Id. at 152.

In any case, however, the proponent of the expert testimony must provide the court with:

> some objective, independent validation of the expert's methodology. The expert's assurances that he has utilized generally accepted scientific methodology is insufficient. . . . The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable.

Moore, 151 F.3d at 276. Thus, there must be an adequate "fit between the data and the opinion proffered." Id. (citing General Elec. Co. v. Joiner, 522 U.S. 136, 146-47 (1997)).

With respect to the issue of relevance, the court must determine whether the opinion would "be helpful to the jury in understanding the evidence or determining a fact in issue." Daubert, 509 U.S. at 591; Bauman v. Centex Corp., 611 F.2d 1115, 1121 (5th Cir. 1980). This rule means that an expert may

"suggest an appropriate inference to be drawn from the facts in evidence if the expert's specialized knowledge is helpful in understanding the facts." United States v. Willey, 57 F.3d 1374, 1389 (5th Cir. 1995). Expert testimony is inadmissible, however, "as to a matter which obviously is within the common knowledge of jurors because such testimony, almost by definition, can be of no assistance." See, e.g., Scott v. Sears, Roebuck & Co., 789 F.2d 1052, 1055 (4th Cir. 1986); Fed. R. Evid. 702 (1972 Comments) (stating that evidence should be excluded if the "the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue"). In such situations, courts recognize a risk that "evaluation of the commonplace by an expert witness might supplant a jury's independent exercise of common sense." Willey, 57 F.3d at 1389 (citing Scott, 789 F.2d at 1055); see also Kopf v. Skyrm, 993 F.2d 374, 377 (4th Cir. 1993). As explained by the Fifth Circuit:

> trial courts must be wary lest the expert become nothing more than an advocate of policy before the jury. Stated more directly, the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument.

In re Air Crash Disaster at New Orleans, 795 F.2d 1230, 1233 (5th Cir. 1986).

**B.   Dr. Nelson's Testimony**

The Court finds that Plaintiff has failed to meet her burden of proving that Dr. Nelson's testimony is both reliable and relevant.  Therefore, Dr. Nelson's testimony is inadmissible and must be excluded.

**1.   Testimony Regarding Defendant's Lack of a Policy**

Dr. Nelson first sought to testify that Defendant was negligent by failing to have a store policy in place requiring employees to locate and secure a spill area immediately, before attempting to obtain cleaning supplies.  (Nelson Report at 12, ¶ 10(b).)  Plaintiff, however, was unable to point the Court to *any* evidence that Defendant's employees had notice of the spill in time to prevent Plaintiff's fall.  (Daubert Hearing ("DH") at 2:02:12-2:06:12.)  Instead, the uncontroverted evidence shows that Plaintiff fell before, or only seconds after, a Target employee received notice of the spill.  (Marroquin Aff. at p. 1.)[2]  Therefore, Dr. Nelson's testimony regarding Defendant's lack of a policy is irrelevant because, even with such a policy in place, Plaintiff still would have fallen.  See Daubert, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful").  Accordingly, Dr. Nelson's opinion on this issue is inadmissible.

---

[2] Consuelo Marroquin's affidavit is attached as Exhibit 1 to Defendant's Motion for Summary Judgment.  (D.E. 23.)

**2. Testimony that the Product Display was Dangerous**

**a. Reliability**

Dr. Nelson also sought to testify that the Defendant's display of cleaning products was unreasonably dangerous in this case because products subject to potential leakage were placed on a shelf without barriers, near floor level in a high-traffic area, where they were subject to contact by carts. (Nelson Report at 12, ¶ 10(a).) Dr. Nelson, however, could not cite any literature, surveys, studies, or treatises, dealing with the issue of the safety of product placement in retail settings. (DH at 2:20:00-2:31:30). Moreover, Plaintiff failed to provide the Court with any indication that other experts in Dr. Nelson's field employ his same method of analyzing the safety of product displays or other conditions. (See Id.) Without such information, the Court has no way of knowing whether Dr. Nelson is employing the "same level of intellectual rigor" as practicing experts in his field. Seatrax, 200 F.3d at 372. Furthermore, without any literature independently verifying Dr. Nelson's technique, this Court cannot find that his technique is "generally accepted" or has been subjected to peer review and publication. Likewise, there is no indication that Dr. Nelson's technique of safety analysis can or has been independently tested or verified.

All that Plaintiff offered to the Court in this case was Dr. Nelson's own repeated assurances that his methodology is "well-established" in his field.  The Court, however, cannot accept Dr. Nelson's representations standing alone.  The Fifth Circuit has explicitly required that a litigant provide "some objective, independent validation of the expert's methodology. The expert's assurances that he has utilized generally accepted scientific methodology is insufficient."  <u>Moore</u>, 151 F.3d at 276.  Because Plaintiff failed to provide the Court with anything other than Dr. Nelson's "say-so" to establish the reliability of his methods, Plaintiff has not met her burden of proof under <u>Daubert</u>.

Despite admitting that there is "no book you can go to" describing his methodology for analyzing Defendant's product display, Dr. Nelson nevertheless argued that his analysis was reliable because the "ingredients" or "components" of his analysis are well-accepted in his field. (DH at 2:35:18.)  For example, Dr, Nelson noted that the product display in this case was located in a "heavy traffic area," which he claimed are recognized in the literature as a factor increasing the danger posed by hazards.  (DH at 2:18:14.)  Similarly, Dr. Nelson argued that it is "well-recognized in the retail safety literature that struck objects and falling objects are a serious

problem in terms of frequency in retail settings" because they can cause leaks or strike customers. (DH at 2:15:40.) Dr. Nelson also asserted that "merchandise restraints" are a recognized way to deal with the problem of falling merchandise. (DH at 2:16:57.) Furthermore, Dr. Nelson indicated that it is widely-published that falls are the number-one source of customer injury in retail settings. (DH at 2:34:25.) Dr. Nelson stated that he merely logically *combined* these well-accepted factors to conclude that the Defendant's product display was unreasonably dangerous. He explained:

> You add a little-league field next to a busy highway, there's no standards, no book you can go to that says you put up a fence between the little league field and the highway. There's no book you can go to. But you add the two ingredients together and you get a dangerous situation. What I've done here is added about four or five ingredients together, and in combination, and all these four or five ingredients are based on studies and literature and well-accepted technology, if you add those together then I feel that it's a significant increase to customer injury if you have all those ingredients in one place and one time.

(DH at 2:35:18.)

This type of analysis, however, is also unreliable for two main reasons. First, Plaintiff failed to establish that Dr. Nelson's "ingredients" were as well-established or generally accepted as he claimed. For example, Dr. Nelson could not cite to any articles or literature documenting the need for merchandise restraints on displays. (DH at 2:49:00 and

10

2:50:45). Instead, Dr. Nelson claimed that "there's no one place [in the literature,] you would have to look in two or three places and use logic and intelligence" to infer the need for product restraints.[3] (Id.) Similarly, in the approximately 200 pages of literature Plaintiff provided to the Court to support Dr. Nelson's testimony, this Court found only a single brief reference to the danger posed by falling objects, and found nothing on the increased risk posed by "heavy traffic areas." (See Pl.'s Resp. to Mot. to Exclude, Ex. 2-3.)[4] Once again, Plaintiff offers only Dr. Nelson's unsupported assertion that these concepts are recognized and accepted in his field.

Second, even if the Court were to assume that the "ingredients" or "components" of Dr. Nelson's analysis are well-established, Plaintiff has failed to prove that Dr. Nelson applied these ingredients reliably to the case at hand. Both the Fifth Circuit and Supreme Court have noted that there must

---

[3] Dr. Nelson could only refer the Court to a single article on the issue of falling merchandise, but he had not even read that article until after he offered his opinion and thus did not rely upon it in conducting his analysis. (DH at 2:51:35.)

[4] Unfortunately, Plaintiff did not provide page numbers or otherwise label the numerous documents within Exhibits 2 and 3 attached to her response to Defendant's motion. The sole reference this Court could find to the danger posed by falling objects was located in the excerpt from the Accident Prevention Manual for Industrial Operations (9th ed. 1988), "Chapter 21: Nonemployee Accident Prevention" at p. 415-16.

be an adequate "fit between the data and the opinion proffered." Moore, 151 F.3d at 276. Nothing "requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." Joiner, 522 U.S. at 146-47.

In this case, the gap between Dr. Nelson's opinion and the data he relied upon is simply too great. Dr. Nelson attempted to conclude that the Defendant's product display was dangerous because of the confluence of several factors: the heavy-traffic area, bottles susceptible to leaks, low-visibility, and the risk of contact by carts. (DH at 3:10:00.) Yet Dr. Nelson had virtually no data to back up any of these factors. For example, Dr. Nelson conceded that he did not know any measurements of the product display or shelving at issue in this case. (DH at 3:10:40.) Nor did he know the measurements of Defendant's shopping carts or if the dimensions of a shopping cart allow it to penetrate the perimeter of the shelving. (DH at 3:10:30, 3:10:55.) Dr. Nelson admitted that he did not know how often carts hit shelves, nor did he know how susceptible the bottles of cleaning products were to leakage if knocked off the shelf. (DH at 3:46:25, 3:47:05, 3:47:40.) Likewise, Dr. Nelson testified that he could not quantify what "high-traffic" meant,

nor did he know how many people are in Defendant's stores on average on any given day. (DH at 3:17:50, 3:18:20.) In short, Dr. Nelson based his opinion that the product display was dangerous largely on speculation about the nature of the display rather than on fact. Such an opinion is unreliable and inadmissible. <u>Barrett v. Atlantic Richfield Co.</u>, 95 F.3d 375, 382 (5th Cir. 1996) (upholding exclusion of expert's testimony where it "would consist of unsupported speculation").

### b. Relevance

Even if Dr. Nelson's testimony were reliable, however, it still would not be admissible because it is simply not helpful to the jury. Dr. Nelson stated that he evaluates the dangerousness of a condition by using the subjective formula of multiplying the "hazard" by the "risk." (DH at 3:45:00.) This type of subjective dangerousness calculation, however, is well within the capacity and knowledge of jurors and thus will be of no assistance to them in evaluating this case. <u>See</u>, <u>e.g.</u>, <u>Taylor v. Illinois Cent. R. Co.</u>, 8 F.3d 584, 585-86 (7th Cir. 1993) (expert testimony regarding the dangerousness of standing on a pile of large rocks is not helpful to the jury); <u>Andrews v. Metro North Commuter R. Co.</u>, 882 F.2d 705, 708 (2d Cir. 1989) (expert testimony that a dirty, filthy, icy, and dimly lit railroad platform was not a "safe place" was not helpful to the

jury); Scott v. Sears, Roebuck & Co., 789 F.2d 1052, 1055 (4th Cir. 1986) (expert testimony related to the dangerous of a curb was not helpful where the jury had the same opportunity to observe the curb as the expert); see also K-Mart Corp. v. Honeycutt, 24 S.W.3d 357 360-61 (Tex. 2000) (jury did not need expert witness to determine whether the lack of a top railing on a cart corral was unreasonable because the jury could see pictures of the corral and draw their own conclusions).  This is especially true where, as here, the jury will have the same "opportunity to observe" the product display as Dr. Nelson by looking at the same photographs he used to render his opinion.  See, e.g., Scott, 789 F.2d at 1055.

There is nothing about Dr. Nelson's analysis or opinion that would be helpful to the jury.  As noted above, Dr. Nelson cannot offer the jurors any specialized data or information about the product display in question.  Rather, all Dr. Nelson can offer is an opinion based on "logic" or "common sense."  For example, when Dr. Nelson claimed that the harm posed by slip-and-falls was severe, Defendant's counsel questioned him:

> **Q:** Do you have any statistical data that you've offered to this Court to support your opinion that this is, there is a high severity rate in connection with this particular risk?
> **A:** That's almost, well, it's self-evident.  I don't have any data.  I mean, [our] life experience could not question that falls cause serious injury.

(DH at 3:41:30.)  Similarly, when asked the probability of a cart hitting a shelf, Dr. Nelson replied:

> Many of these things there are not numbers you can put there.  But if you cannot put a number doesn't mean you can walk away and ignore it.  If subjectively, reasonable minds would say there is a real possibility of it occurring and then you plug in the other ingredients such as severity and exposure . . . [and] take it to the next step.

(DH at 3:48:00.)  In general, Dr. Nelson testified that the "hazard" and "risk" posed by the product display are "so self-evident" that specific data is unnecessary.  (Id.)  Dr. Nelson admitted that the issues of probability and severity of the risk could be studied, "but short of that you have to use reason." (DH at 3:48:48.)  The jury, however, will not need Dr. Nelson to know how to use "reason" to evaluate the dangerousness of a product display.  Therefore, Dr. Nelson would only serve as an advocate before the jury and would not bring "the jury more than the lawyers can offer in argument."  In re Air Crash Disaster at New Orleans, 795 F.2d 1230, 1233 (5th Cir. 1986).  As such, his testimony is not helpful and must be excluded.

**IV. CONCLUSION**

For the reasons discussed above, Defendant's Motion to Exclude the Testimony of Gary S. Nelson (D.E. 33) is GRANTED.

SIGNED and ENTERED on the 3rd day of April, 2006.

_____
Janis Graham Jack
United States District Judge