IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| KYONG HUI LANE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. C-05-306 |
| | § | |
| TARGET CORPORATION, | § | |
| | § | |
| Defendant. | § | |

ORDER GRANTING IN PART, DENYING IN PART, DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

On this day came on to be considered Defendant's Motion for Summary Judgment (D.E. 23). For the reasons discussed below, Defendant's motion is GRANTED IN PART, DENIED IN PART.

I.   JURISDICTION

This Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1).

II.  BACKGROUND

On May 18, 2003, Plaintiff Kyong Hui Lane ("Plaintiff") slipped and fell at one of Defendant Target Corporation's ("Defendant") retail stores, allegedly suffering injuries as a result of the fall. Plaintiff claims that Defendant is liable for her injuries based on two premises defects: (1) the spill in which she fell; and (2) the display of cleaning products.

On August 5, 2004, Plaintiff filed suit against Defendant in

1

the 84th Judicial District Court, Nueces County, Texas, alleging that Defendant's negligence caused her injuries.  On June 21, 2005, Defendant removed the case to this Court pursuant to 28 U.S.C. §§ 1441 and 1446.  On January 24, 2006, Defendant filed a Motion for Summary Judgment (D.E. 23) to which Plaintiff filed a response (D.E. 30).   On February 27, 2006 Defendant filed a reply to Plaintiff's response.  (D.E. 35).

**III. SUMMARY JUDGMENT EVIDENCE**

The following facts are not in dispute:

On May 18, 2003, Consuelo "Connie" C. Marroquin was working inside Target for a an unrelated company named "World Class" taking credit card applications. See D.E. 23, Ex. 1 Affidavit of Connie Marroquin at ¶ 2.  She had a table set up near the front of the store, facing the front doors, just off the side of the jewelry display.  Id.  When she stood near her table, she could see shelves stocked with household cleaning products, like Windex. Marroquin Aff't at ¶ 3. There was an empty cart near the cleaning products display, and she saw a customer hit the empty shopping cart with his cart.  Id.  The empty cart then hit the display shelves, knocking off a plastic bottle of Target brand cleaner onto the floor.  Id.  A few seconds later, Ms. Marroquin observed cleaning liquid leaking onto the floor around the bottle and that customers were avoiding the area.  Id.

Ms. Marroquin was about to go find a Target employee to report

the spill when she saw a customer pointing out the spill to a Target employee. Marroquin Aff't at ¶ 4. At the same moment, Ms. Marroquin observed a small framed woman [plaintiff], "walk right through the liquid." Id. Plaintiff slipped and fell in the liquid. Id.

Juan Hernandez, a Target employee, was working the day of the spill and plaintiff's fall. See D.E. 30, Ex. 2, Deposition of Juan Hernandez, at 8. A gentleman advised him of a spill. Hernandez Depo. at 32-34. Mr. Hernandez went to Lane 2 to get paper towels. Id. at 34. Mr. Hernandez grabbed the paper towels and began to proceed toward the area of the spill; however, he stopped at the maintenance closet to get additional items to clean the spill. Id. at 35-36. When he arrived at the display, he saw a female customer on the floor. Id. at 52; see also D.E. 23, Ex. 2, Affidavit of Juan Hernandez at ¶ 2. The customer was near an end cap of shelves where bottles of cleaning supplies were displayed, and one of the bottles was on the floor leaking. Hernandez Aff't at ¶ 2.

At the time she fell, plaintiff was looking at the ceiling signs. See D.E. 30, Ex. 1, Deposition of Kyong Hui Lane at 91. After she fell, a young woman named Rosie, who was a nurse, stayed with plaintiff until an ambulance came. Id. at 95.

**IV.  DISCUSSION**

   **A.   Summary Judgment Standard**

   Federal Rule of Civil Procedure 56 states that summary

judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c).  The substantive law identifies which facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996).  A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248; Judwin Props., Inc. v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1046-1047 (5th Cir. 1996).  If the nonmovant bears the burden of proof on a claim, the moving party may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case.  Celotex Corp., 477 U.S. at 325; Ocean Energy II, Inc. v. Alexander & Alexander, Inc., 868 F.2d 740, 747 (5th Cir. 1989).

Once the moving party has carried its burden, the nonmovant "may not rest upon the mere allegations or denials of his pleading,

but . . . must set forth specific facts showing that there is a genuine issue for trial." First Nat'l Bank of Arizona v. Cities Service Co., 391 U.S. 253, 270 (1968); see also Schaefer v. Gulf Coast Reg'l Blood Ctr., 10 F.3d 327, 330 (5th Cir. 1994) (stating that non-moving party must "produce affirmative and specific facts" demonstrating a genuine issue).  The non-movant's burden is not satisfied by conclusory allegations, unsubstantiated assertions, or some metaphysical doubt as to the material facts.  Willis v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995); see also Brown v. Houston, 337 F.3d 539, 541 (5th Cir. 2003) (stating that "improbable inferences and unsupported speculation are not sufficient to [avoid] summary judgment").  Similarly, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for [that party]." Doe on Behalf of Doe v. Dallas Indep. Sch. Dist., 153 F.3d 211, 215 (5th Cir. 1998) (internal quotes omitted).

When the parties have submitted evidence of conflicting facts, however, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Willis, 61 F.3d at 315.  Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the nonmoving party, no reasonable jury could return a verdict for that party.  See, e.g., Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 399

(5th Cir. 2000).  "That the movant appears more likely to prevail at trial is no reason to grant summary judgment; it is not the province of the court on a motion for summary judgment to weigh the evidence, assess its probative value, or decide factual issues." Byrd v. Roadway Exp., Inc., 687 F.2d 85, 87 (5th Cir. 1982); Aubrey v. Sch. Bd. of Lafayette, 92 F.3d 316, 318 (5th Cir. 1996).  If, however, the nonmovant's "evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50.

### B.    Premises Liability

Plaintiff seeks to hold Defendant liable for her injuries on grounds of premises liability.  (See Pl.'s Resp. to Def.'s Mot. ("Resp.") at p. 6.)  In order for a Plaintiff to recover under this theory, she must "prove that (1) [defendant] had actual or constructive knowledge of a condition on the premises, (2) the condition posed an unreasonable risk of harm, (3) [defendant] did not exercise reasonable care to reduce or to eliminate the risk, and (4) [defendant's] failure to use such care proximately caused her injuries." H.E. Butt Grocery Co. v. Resendez, 988 S.W.2d 218, 219 (Tex. 1999); Keetch v. Kroger Co., 845 S.W.2d 262, 264 (Tex. 1992).

In this case, Plaintiff alleges the existence of two different dangerous conditions giving rise to liability: (1) the presence of cleaning fluid on the floor; and (2) Defendant's product display

itself, that is, the "improper placement of liquid products in highly traversed and potentially dangerous areas of the store." (Resp. at p. 1; see also Pl.'s Orig. Compl. at ¶ 14.)

### 1.   The Spill as the Dangerous Condition.

Plaintiff first contends that the presence of the cleaning fluid on the floor was an unreasonably dangerous condition, and that Defendant failed to take reasonable steps to eliminate the danger after receiving actual notice of its existence.  (Resp. at p. 1.)  Defendant does not dispute that a jury could find that a liquid on the floor is an unreasonably dangerous condition.  See, e.g., Threlkeld v. Total Petroleum, Inc., 211 F.3d 887 (5th Cir. 2000) (water on the floor of bathroom could constitute a dangerous condition); Keetch v. Kroger Co., 845 S.W.2d 262 (Tex. 1992) (chemical on the floor of store could constitute a dangerous condition).  Rather, Defendant argues that summary judgment is appropriate because the evidence shows that Defendant did not have actual or constructive notice of the spill until it was too late to prevent Plaintiff from falling.

With respect to the issue of notice, the Texas Supreme Court has held that a "slip-and-fall plaintiff satisfies the notice element by establishing that (1) the defendant placed the substance on the floor, (2) the defendant actually knew that the substance was on the floor, or (3) it is more likely than not that the condition existed long enough to give the premises owner a

reasonable opportunity to discover it."  <u>Wal-Mart Stores, Inc. v.</u>

<u>Reece</u>, 81 S.W.3d 812, 814 (Tex. 2002) (citing <u>Wal-Mart Stores, Inc.</u>

<u>v. Gonzalez</u>, 968 S.W.2d 934, 936 (Tex. 1998)); <u>see</u> <u>also</u> <u>Keetch</u>, 845

S.W.2d at 265.

Plaintiff has no evidence that Defendant placed the substance
on the floor or that the spill existed long enough for the
Defendant to have a reasonable opportunity to discover it.  <u>See</u>
<u>Reece</u>, 81 S.W.3d at 814 (stating that there must be some temporal
evidence in order to support a finding of constructive knowledge).
Instead, Plaintiff argues that the Defendant had *actual* notice of
the danger because a customer notified Mr. Hernandez of the
existence of the spill.  Hernandez Depo. at p. 32.  Plaintiff
argues that, upon receiving notice of the spill, Mr. Hernandez
failed to act reasonably to remedy the danger.  For example, after
being notified of the spill, Mr. Hernandez did not immediately
report to the spill, but instead went to a maintenance cart to
retrieve supplies.  Hernandez Depo. at 49.  In addition, he had a
two-way radio in his possession, yet he failed to contact other
employees for assistance.  <u>Id.</u> at 48-9, 59.  Plaintiff claims that,
"had Hernandez proceeded directly to the spill at issue and
remained there until another employee could help him, [the fall]
would not have occurred."  (Resp. at p. 6.)

There is no evidence, however, that Mr. Hernandez received
notice of the spill in time to prevent her fall.  Ms. Marroquin

testified:

> I was about to find a Target employee to report the spill when I saw a customer look at the spill and walk to the front of the store. He walked up to a Target employee and pointed back in the direction of the spill. The Target employee was a young, thin, tall, Spanish man. Just then, I saw a small framed woman, who appeared to be in a hurry, walk right through the liquid. She slipped in the liquid and fell.

Marroquin Aff't at ¶ 4. According to Ms. Marroquin, Defendant received actual notice of the spill at the same time as, or only seconds before, Plaintiff's fall.

Plaintiff has failed to provide the Court with any evidence controverting Ms. Marroquin's testimony. At the Daubert hearing, held March 16, 2006, the Court gave Plaintiff a chance to point to any evidence establishing that there was a significant passage of time between Defendant's receipt of notice and Plaintiff's fall. (Daubert Hearing ("DH"), March 16, 2006, at 2:02:48.) Plaintiff's counsel, however, replied only that he believed Mr. Hernandez's testimony showed that, when Mr. Hernandez was notified of the spill, he looked over to the spill-area and saw that no one had fallen yet. (DH at 2:02:58.) Therefore, Plaintiff reasoned, a jury could infer that time passed between the notice and Plaintiff's fall.

This Court, however, can find no such testimony in Mr. Hernandez's deposition. To the contrary, Mr. Hernandez testified that the customer who notified him of the spill "pointed in the

general direction of the seasonal . . . [but that Hernandez] *couldn't see anything because of the end caps."* Hernandez Depo. at 34. (emphasis added).   Mr. Hernandez also testified that he "did not know where the spill was [because he] could not see it from [his] position."   Hernandez Depo. at 38.   Similarly, Mr. Hernandez did not observe the area of the spill on his way over to the maintenance cart.   Id. 39.   Thus, Mr. Hernandez' testimony does not controvert Ms. Marroquin's testimony that the notice and the fall happened simultaneously.

Without any evidence that there was a significant period of time between the notice and the fall, Plaintiff cannot establish an essential element of her case: that Mr. Hernandez's allegedly-negligent response was the proximate cause of her injuries. Resendez, 988 S.W.2d at 219 (stating that a plaintiff must show that defendant's alleged "failure to use [reasonable] care proximately caused her injuries").   Mr. Hernandez' actions in responding to the spill are not relevant because in this case, the facts show that delay in cleaning the spill was not a proximate cause of plaintiff's injuries.   Therefore, Defendant's motion for summary judgment on this claim is GRANTED.

### 2.   The Display Itself as the Dangerous Condition

Plaintiff next claims that "the improper placement of liquid products in highly traversed and potentially dangerous areas of the store" was a dangerous condition for which Defendant can be held

10

liable.  (Resp. at p. 1.)   Defendant argues that it cannot be held

liable on this claim because: (1) Plaintiff's only evidence

supporting this theory is the testimony of Dr. Gary S. Nelson,

which this Court has already excluded as unreliable and irrelevant

(Def.'s Reply to Pl.'s Resp. ("Reply") at p. 3.); and (2) Plaintiff

has no evidence that Target created this condition or was aware of

it.  (Reply at p. 3.)

Under Texas law, a condition is unreasonably dangerous if

there is a "sufficient probability of a harmful event occurring

that a reasonably prudent person would have foreseen it or some

similar event as likely to happen." County of Cameron v. Brown, 80

S.W.3d 549, 556 (Tex. 2002); Hall v. Sonic Drive-In of Angleton,

Inc., 177 S.W.3d 636, 646 (Tex. App.--Houston 2005).

Foreseeability "does not require that the exact sequence of events

that produced an injury be foreseeable" as long as the general

damage is foreseeable.  Id.  Several courts have recognized that

reasonableness determinations, such as this one, "are fact-

intensive inquiries, and thus, whether a particular condition is

unreasonable or not is a fact question for the jury."  Alger v.

Brinson Ford, Inc., 169 S.W.3d 340, 345 (Tex. App.--Waco 2005).

The issue of whether a particular condition is unreasonably

dangerous is "well-suited for a jury's determination . . .[because]

there is no definitive, objective test that may be applied to

determine whether a specific condition presents an unreasonable

risk of harm."   Reliable Consultants, Inc. v. Jaquez, 25 S.W.3d

336, 342 (Tex. App.--Austin 2000) (citing Seideneck v. Cal

Bayreuther Associates, 451 S.W.2d 752, 754 (Tex. 1970)).   Other

"premises liability cases involving similar facts are sometimes

probative of whether a type of condition in a particular situation

may present an unreasonable risk of harm, [but] they are by no

means conclusive on the question."   Id.

     In this case, there is evidence from which a jury could infer

that Defendant's product display created a foreseeable risk of

spills and resulting slips-and-falls.   For example, there is a

photograph in evidence of the allegedly-dangerous product display.

See Hernandez Aff't, Ex. 1.[1]  From this picture, a jury could infer

that Defendant displayed numerous plastic bottles of cleaning fluid

on open shelving.   Id.   The bottles appear to have narrow bases,

relative to their height, and thus a jury could infer that the

bottles could easily tip-over or fall if bumped.   Id.   Similarly,

several of the products appear to be displayed at or near the edge

of the shelving, and there are no barriers on the shelves to

restrain the products from falling off of the shelf.   (Id.)

Although Defendant contends that the bottles are "designed not to

break," there is no evidence in the record to support that

assertion.   (Def.'s Mot. for Summ. Judg. at p. 6.)   A jury could

_____

     [1] The Hernandez affidavit is attached as Exhibit 2 to
Defendant's Motion for Summary Judgment. (D.E. 23.)

use their common sense to infer that plastic bottles may break, crack, or leak, when they fall to the floor.

Furthermore, Plaintiff has evidence that the display was located in one of the most heavily-trafficked area of the store, and that nearly everyone who enters the store must pass the display.  Hernandez Depo. at 45.  Similarly, there is at least some evidence that the display, and the spill created by it, might have been difficult for customers entering the store to spot and avoid. See, e.g., Hernandez Depo. at 50.  From this evidence, a jury could find that the display was dangerous.  See, e.g., Corbin v. Safeway Stores, Inc., 648 S.W.2d 292, 296 (Tex. 1983) (a jury could infer that a product display of grapes was unreasonably dangerous where the grapes were displayed in a slanted bin over a linoleum tile floor with no protective floor mat); H.E. Butt Grocery Co. v. Resendez, 988 S.W.2d 218, 219 (Tex. 1999) (acknowledging that product displays can be unreasonably dangerous, but requiring some evidence that the *manner* of display created an unreasonable risk of harm).

Defendant contends that Plaintiff has no evidence Target created the dangerous condition or was aware of it.  (Reply at p. 3.)  This argument is also unpersuasive.  There is no dispute that Defendant created the product display in question, and it is well-settled that "[t]he fact that the owner or occupier of a premises created a condition that posed an unreasonable risk of harm may

13

support an inference of knowledge."   Keetch v. Kroger Co., 845

S.W.2d 262, 265 (Tex. 1992) (cited by Hall v. Sonic Drive-In of

Angleton, Inc., 177 S.W.3d 636, 645 (Tex. App.--Houston 2005).

Defendant attempts to argue that "there is no proof that a Target

employee placed the [particular] bottle in the location from which

it fell."  (Reply at p. 3.)  The placement of products on shelves,

however, is "a function of general store maintenance, [and thus]

the jury reasonably could have inferred that [Defendant], through

its employees, had [put the bottle] in place."  Corbin, 648 S.W.2d

at 296 (citing Coffee v. F.W. Woolworth Co., 536 S.W.2d 539, 540

(Tex. 1976).  Summary judgment is therefore inappropriate on this

claim and Defendant's Motion is DENIED.

## IV.   CONCLUSION

For the reasons stated above, Defendant's Motion for Summary

Judgment (D.E. 23) is GRANTED IN PART, DENIED IN PART.  Summary

Judgment is GRANTED on Plaintiff's claim that Defendant failed to

remedy the spill.  Summary Judgment is DENIED on Plaintiff's claim

that Defendant created an unreasonably dangerous product display.

SIGNED and ENTERED this 28th day of April, 2006.

_____
Janis Graham Jack
United States District Judge